REQUESTED BY: Allen L. Curtis, Executive Director, Nebraska Commission on Law Enforcement and Criminal Justice
QUESTION: Because of the reversal of his conviction, is Jeremy Sheets entitled to monies deposited into the Victim's Compensation Fund?
CONCLUSION: Not at this time.
You have advised that Mr. Jeremy Sheets was required to place $1,000 into the Victim's Compensation Fund pursuant to Neb. Rev. Stat. §81-1836 (1999), and that he has asked, through counsel, that the funds be returned to him now that his conviction has been reversed. See State v.Sheets, 260 Neb. 325, 618 N.W.2d 117 (Sept. 15, 2000). Notwithstanding that the statute is awkwardly worded, we believe Neb. Rev. Stat. §81-1837 (1999), is the statute one would look to for an answer to the question. It provides as follows:
Upon disposition of charges favorable to any person accused of committing a crime or upon a showing by such person that five years have elapsed from the deposit of money into the Victim's Compensation Fund by the accused pursuant to section 81-1836 and further that no actions are pending against such person pursuant to the Nebraska Crime Victim's Reparations Act, the committee shall immediately pay the money deposited pursuant to such section by the accused to such person.
You may note that the section appears to apply where the accused has deposited money into the Fund, and does so pursuant to Neb. Rev. Stat. § 81-1836. Twice it indicates that it is the accused who deposits the money. However, § 81-1836 says nothing about the accused depositing money into the Fund. Rather, the depositor is to be the entity which contracts with the accused. This is one of the reasons we say that §81-1837 was awkwardly worded. Apparently, payments into the Fund by the contracting entity were viewed as having come from the accused, himself. Therefore, we do not believe the applicability of § 81-1837 would turn upon whether an accused personally deposited the money into the Fund. Here, though, it seems neither the contracting entity or Mr. Sheets made the deposit. Instead, the monies were transferred to the Fund from the Inmate Trust Fund maintained by the Department of Correctional Services. This followed an opinion from our office indicating that Benetton, the company making the payment to then-inmate Sheets, ought to have directed the payment to the Fund instead of to Mr. Sheets. This conclusion was rooted in the belief that Benetton's payment was at least in part made in exchange for Sheets' comments about the crime for which he had been found guilty; the murder of Kenyatta Bush. Although Benetton failed to direct the payment to the Fund, the monies apparently were still in Sheets' Inmate Trust Account. Since it was not too late for the spirit of the law to be fulfilled by a transfer of the monies to the Fund, it was believed that this was what should be done. Op. Att'y. Gen. No. 00013 (February 28, 2000). We do not think that the fact the funds came from a third party is something that would render the refund provisions of Neb. Rev. Stat. § 81-1837 inoperable, as the Department merely carried through with what Benetton should have done.
One may wonder whether Neb. Rev. Stat. § 81-1837 applies in a case where the payment in question was to be made to a person already convicted, as was the case with Mr. Sheets. The section repeatedly refers to "the accused" and addresses the question of when the Crime Victim's Reparations Committee must return "the money deposited . . . by theaccused". However, since Neb. Rev. Stat. § 81-1836 appears to use the terms "accused" and "person so convicted" interchangeably, we would understand § 81-1837 to include cases where the payment had been made after trial. It is doubtful that there was an intention to differentiate between accused persons and convicts with regard to either the redirection of these sorts of payments or the eligibility for a refund.
Another question has to do with the showing required to receive a refund. Is it enough that there has been a favorable disposition of charges, or must there also be no actions pending against such person pursuant to the Nebraska Crime Victim's Reparations Act? Or does that "no pending actions" criterion apply only where a refund is sought on the basis that five years have elapsed from the § 81-1836 deposit of money into the Fund? We tend to think the latter is the case and that a favorable disposition of charges is an independent ground for a refund. If one tries to read the sentence without the "passage of five years" phrase, the reason for our view will become clear. It becomes obvious that the "no pending actions" criteria is a component of the showing to be made by a person who is seeking a refund on the basis of a long passage of time. He is to show both that five years have passed and that no actions are pending. Since the issue before us involves only the "favorable disposition of charges" criterion, it is unnecessary to determine, at least at the present time, what was contemplated by the provision's reference to pending actions against the accused.
Has there been a "disposition of charges favorable to any person accused of committing a crime" within the meaning of Neb. Rev. Stat. § 81-1837? In the case of Mr. Sheets, the focus is on an appellate court reversal of a conviction. The statute, however, seems to focus upon trial-stage events. We say this because it specifically refers to "disposition of charges" and "person accused," terms normally associated with the trial stage. Again, because an "accused" appears to be used broadly in the Act to encompass persons who have been convicted, we doubt it was intended that the provision be limited to trial stage dispositions. Plus, under the statutory scheme, we cannot see why the Legislature would have treated favorable resolutions at the trial stage differently than favorable resolutions which occurred after the conviction.
That said, we do not believe the reversal on the ground of improper admission of evidence, combined with a remand for a new trial as occurred in Mr. Sheets' case, is a favorable disposition of charges within the meaning of § 81-1837. Rather, the sort of favorable dispositions in view were probably acquittals, findings of not guilty, or something akin to such. An example of a qualifying appellate disposition would be a reversal with directions to dismiss. The Supreme Court's action in Mr. Sheets' case left open the possibility that he could still be convicted on the same charge. Would it not be odd if he would be entitled to a refund where the original charge was either still pending or could readily be refiled, under a statutory scheme which provides for the redirection of monies which were payable to persons accused of crime, but not yet convicted? There would be no reason to treat a person standing accused after an appeal better than one standing accused before trial.
There are indications that the statutes are to be interpreted in a way that favors compensation of victims and our conclusion is consistent with that goal. For example, if no appeal or other proceeding with regard to it is pending, then proof of a conviction is to be taken as conclusive evidence in Crime Victim's Reparations proceedings that the offense occurred and that the accused committed it. Neb. Rev. Stat. § 81-1811
(1999). Notably, the converse is not said to be true. That is, it has not been decreed that an acquittal on the charge selected by the prosecution will necessarily preclude an award from the Fund. At the urging of the prosecutor, the Crime Victim's Reparations Committee may suspend proceedings under the Act where prosecution is pending or imminent, indicating that the outcome of criminal proceedings is not irrelevant. Neb. Rev. Stat. § 81-1816 (2). But note that the suspension of proceedings is discretionary. Furthermore, an order may be made under the Act whether or not anyone "is prosecuted for or convicted of an offense arising out of the act which caused the injury or death involved in the application." Neb. Rev. Stat. § 81-1816 (2) (1999).
If the reversal with remand were the last word on the subject, we would not hesitate to conclude that the disposition was not "favorable" enough to trigger § 81-1837's refund requirement. However, your inquiry was accompanied by a demand letter from Mr. Sheets' attorney. The attorney represented that the prosecutor has since dismissed the charges. Was the dismissal after remand a favorable disposition of charges within the meaning of Neb. Rev. Stat. § 81-1837? A prosecutor will sometimes dismiss a complaint or information even where the prosecution has every intention of proceeding with the case, such as where a necessary witness cannot be found. State v. Batiste, 231 Neb. 481,437 N.W.2d 125 (1989), provides a good example. Batiste had been charged with first degree murder. On October 29, 1986, the State dismissed the information because a witness could not be located. On June 18, 1987, the State filed a first degree murder charge against Batiste for the same homicide alleged in the original information. Batiste was eventually convicted and the conviction was upheld on appeal. Was the prosecutor's dismissal a "disposition of charges favorable" to Batiste? One would have to answer, "Ultimately, no." The dismissal actually helped the State avoid speedy trial problems that otherwise may have barred trial and conviction. At the other end of the spectrum there undoubtedly are cases which have been dismissed prior to trial because the prosecution is convinced that the accused is innocent. To limit refunds to cases where there has been an acquittal or verdict of not guilty seems too restrictive. But what we have here is a dismissal after conviction. And not only that, the Nebraska Supreme Court evaluated the totality of the evidence as it was required to do under Double Jeopardy analysis, and deemed it sufficient to convict.
This is one of those cases where it may not be easy to tell whether the dismissal is one genuinely favorable to the accused; something akin to an acquittal or not guilty verdict. To have to evaluate the matter would seem to run counter to the requirement in § 81-1837 that the Committee immediately refund the money upon disposition of charges favorable to the accused. But to do the simple thing and refund the money whenever there has been a dismissal of charges, thereby allowing the return of payments to defendants like Batiste who received only a temporary reprieve from prosecution, seems to run counter to the law's thrust of not permitting criminals to profit from their crimes and shifting such would-be profits to crime victims.
Genuinely favorable dispositions should be readily determinable. In cases like this, where they are not, we do not believe the Committee is obliged to refund the money under the "immediate refund for favorable disposition of charges" provision of § 81-1837. Of course, there may be cases — this may be one of them — where the dismissal turns out to be the end of the matter. If the Act provided no recourse to the defendants in those cases, we may not have reached the conclusion that we did. But the denial of a refund under the first part of §81-1837 is mitigated by the fact that the person from whom the payment was redirected may still be able to obtain a refund. As previously noted, the section includes a provision which entitles an accused to a refund upon a showing that five years have elapsed from the deposit of money into the Fund and that no actions are pending against him pursuant to the Act.
Sincerely,
 Don Stenberg Attorney General
 Mark D. Starr Assistant Attorney General